**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CASIMIR M. TOCZYLOWSKI | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| SAMANTHA G. GIULIANO AND PAUL P. PALLADINO | |
| | No. 1550 EDA 2017 |

Appeal from the Judgment Entered June 1, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 1134 of September 2013

BEFORE:  BOWES, J., LAZARUS, J., and RANSOM, J.

MEMORANDUM BY RANSOM, J.:                    **FILED MARCH 27, 2018**

Appellant, Casimir M. Toczylowski, appeals from the judgment entered June 1, 2017, in favor of Appellees Samantha G. Giuliano and Paul P. Palladino. We affirm.

We base the following statement of facts on the opinion of the trial court, which in turn is supported by the record. *See* Trial Court Opinion (TCO), 7/18/17, at 1-4. Appellant and Appellees are neighbors, owning adjacent properties located at 807 S. 2nd Street, Philadelphia, Pennsylvania, and 802 S. Hancock Street, Philadelphia, Pennsylvania, respectively. Appellees' property is north of Appellant's property. Between the properties, south of Appellees' property and north of Appellant's property, is a small stretch of land, approximately six feet wide. The land is entirely enclosed by Appellees'

home to the north, a locked gate to the east, a cinderblock wall to the south, and Appellees' backyard to the west.

Appellant, who has lived in his home over seventy years, last recalled stepping on the stretch of land when he was ten years old. Appellant recalled a gate enclosing the land and restricting access to the Hancock Street property in place at least forty or fifty years ago. When Appellees bought the home in 2000, the stretch of land was advertised as a driveway; accordingly, Appellees believed the land, including the northern face of the cinderblock wall, was part of their property. They utilized the land as a driveway and for storage. Although Appellant considered this land "un-owned," he did not dispute Appellees' use until, in 2011, they decided to construct an addition to their home on the stretch of land.

Appellees consulted with an architect and contractor, obtained construction permits from the City of Philadelphia, and began construction. Appellees approached Appellant and requested access to and use of his courtyard for construction purposes. Testimony differed as to the conditions of this use. Appellant claimed it was conditioned on the addition remaining separate from his home. Appellees testified that Appellant never required a condition at all. Regardless of the agreement, Appellant filed an administrative complaint with the Philadelphia Department of Licenses and Inspections ("L&I"), averring that Appellees had attached flashing to the roof and side of his home. L&I issued a violation notice stating that the addition encroached upon Appellant's property and directed Appellees to remove the

encroachment. Appellees were then directed to conduct a survey to determine the boundaries of their property.

Appellees hired a professional land surveyor who, following a thorough investigation, identified the boundary line in accordance with deeds of record and a city survey conducted in 1964. The surveyor concluded that Appellees' southern property line is located in the middle of the cinderblock wall, and the southern face of the addition was located more than two inches north of the property line. Thus, the strip of land upon which the addition was constructed was not on Appellant's property. L&I subsequently closed the violation and noted Appellees' compliance.

In September 2013, Appellant commenced a civil action by writ of summons. He retained the services of a former surveyor and regulator for the Second District of the City of Philadelphia. This surveyor concluded that the Appellees' addition encroached upon his property. Appellant then filed a complaint, raising counts of ejectment and trespass. Appellees filed a counterclaim for abuse of process. Litigation commenced and eventually, following a failed settlement attempt, proceeded to a bench trial.

At trial, Appellant stated he has lived in his home for his entire life. The last time he set foot on the disputed strip of land was more than sixty years ago. Appellant admitted that a gate enclosing the land and restricting access has been in place for forty or fifty years. Additionally, Appellant admitted he never thought he owned the land north of the wall.

Two surveyors testified for Appellant. Paul Lonie testified that at the time Appellant's survey was performed, he was not employed by the City of Philadelphia, though he did involve the City of Philadelphia Second District's surveyor to assist him by marking a property boundary. He stated that it is the responsibility of the survey district to put deed information together; his responsibility was simply to "locate the different things from there." Mr. Lonie conducted his survey and determined that the cinderblock wall separating the properties was six inches south of Appellant's property line. He admitted that he did not review Appellees' deed, take measurements of Appellees' property, and could not see or access Appellees' property. Mr. Lonie stated that the survey was accurate "for what it is." Mr. Lonie also stated that the records relied upon by city surveyors are not available to the public and that, following his retirement, he no longer had access to them either.

Allen Bommentre, Jr., testified that at the time of the survey, he was the City of Philadelphia's surveyor for the Second District. He further described the method used to determine property lines, including placing a mark in the field and calculating boundaries from that mark. The property lines he used were fixed by a prior survey of 2nd Street in Philadelphia, Pennsylvania, made in 1964. Mr. Bommentre did not review Appellees' deed. He stated he did not need to review the deeds to conduct a survey, and that the measured lines should "correspond pretty closely to the deeds." He took no measurements of Appellees' property. Mr. Bommentre noted that city surveyors may correct and regulate deeds, especially where the language is

imprecise (i.e. "more or less").  Mr. Bommentre admitted that Appellees' deed is precise, but Appellant's deed is not.  Regardless, Mr. Bommentre concluded that the property line was actually north of Appellant's cinderblock wall.

At the conclusion of the trial, the court found in favor of Appellees and against Appellant for trespass and ejectment, and in favor of Appellant and against Appellees on their counterclaim for abuse of process.  Specifically, the trial court noted the deficiencies of Appellant's survey and the methodology used by his surveyors, finding he had not met his burden of proof.  Appellant filed a post-trial motion, which was denied.  Appellees did not file a post-trial motion.

Appellant timely appealed.  The court did not order him to file a Pa.R.A.P. 1925(b) statement.  Appellees filed a cross-appeal but appear to have abandoned their claims before this Court.  The trial court issued an opinion.

Before this Court, Appellant raises the following questions for our review:

> 1. Did the trial judge commit an error of law, or abuse his discretion as the trier of fact, by considering the substantive contents of a survey prepared by a surveyor who was not in court, the judge having allowed use of the survey at trial (after a hearsay objection) "not . . . for its truth but only for the limited purposes for which it had been shown to a different surveyor?
>
> 2. Did the trial judge commit reversible error by ignoring the settled "original survey" principle used uniformly by surveyors to determine the location of a boundary in physical space and by basing his boundary finding instead on factors that were irrelevant to the determination of the boundary in physical space?

- 5 -

3. Did the judge commit reversible error by basing his decision as to [Appellees'] "adverse possession" defense on a misunderstanding of the size and location of land at issue in the case—specifically, by thinking that the width of the area was approximately seven feet (encompassing all of the open area south of [Appellees'] original residential structure) when, in fact, width of the "sliver of land" in dispute was less than a foot (with only two or three inches being north of the wall), that area being the space between the different boundary determinations reached by two surveyors, and then basing his conclusion that the defendants had "adversely possessed" the property on activities conducting on the entire seven-foot-wide area?

4. Did the trial judge commit reversible error by overlooking the fact that [Appellees] presented no evidence in support of an essential element of their adverse-possession defense: that their immediate predecessors-in-title, back through the 21-year prescriptive period, had "adversely possessed" the property at issue in the same manner as the defendants?

Appellant's Brief at 4-6 (suggested answers omitted).

On appeal from a non-jury trial, this Court's scope and standard of review are as follows:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Bank of New York Mellon v. Bach*, 159 A.3d 16, 19 (Pa. Super. 2017), *appeal denied*, No. 281 MAL 2017 (Pa. Aug. 29, 2017) (internal citations omitted).

Additionally, in a nonjury trial, the trial court sitting as the finder of fact is free to believe all, part, or none of the evidence, and this Court will not disturb the trial court's credibility determinations. *Voracek v. Crown Castle USA Inc.*, 907 A.2d 1105, 1108 (Pa. Super. 2006). "The trial court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence." *Shaffer v. O'Toole*, 964 A.2d 420, 422–423 (Pa. Super. 2009).

Initially, we note that while Appellant's brief contains a thirty-eight-page statement of the case, which has references to the reproduced record, and a "general overview" of the law, Appellant's argument is generally devoid of citations to the record and to relevant authority. *See In re Estate of Whitley*, 50 A.3d 203, 209-10 (Pa. Super. 2012) (noting that the argument portion of the appellate brief must contain a discussion and citation of pertinent authorities and failure to cite relevant legal authority constitutes waiver of the claim on appeal); *see also* Pa.R.A.P. 2101; Pa.R.A.P. 2119(b)-(c). Accordingly, he risks waiver on his issues, as will be discussed further herein.

Further, we note with disapproval the insulting and dismissive tone Appellant takes in his brief. Appellant characterizes the trial court as "failing to acknowledge," "misunderstanding," "ignoring," or "forgetting" evidence, or refers insultingly to the time taken to author the opinion. While Appellant's frustration with the outcome of the trial is understandable, this language goes far beyond mere advocacy. We remind counsel that the Pennsylvania Code of Civility, Art. II(1)-(2), requires that a lawyer speak and write in a civil and respectful manner in all communications with the court, and treat all participants in the legal process in a civil, professional, and courteous manner at all times. *See* Pa. Code of Civility, Art II. With those principles in mind, we now turn to Appellant's issues.

First, Appellant claims that the trial court committed an error of law and abuse of discretion by considering the contents of Appellees' surveyors' report. *See* Appellant's Brief at 52. Appellant contends that the report was introduced at trial solely for the limited purpose of cross-examination, and the court could not consider it "for its truth" but only for the limited purpose for which it had been shown to the witness following Appellant's hearsay objection. *Id.*

In his argument, Appellant cites to no pertinent authority except the Pennsylvania Code of Judicial Conduct Rule 2.9(C), which states that "A judge shall . . . consider only the evidence presented and any facts that may be properly judicially noticed." We note that our Code of Judicial Conduct "set[s] a norm of conduct for all our judges and do[es] not impose substantive legal duties on them." *Commonwealth v. Druce*, 848 A.2d 104, 109 (Pa. 2004)

(citation omitted). Appellant has cited no law regarding the admission of evidence, hearsay, or any hearsay exceptions which may have been relevant to this case. Thus, Appellant has waived this argument for purposes of appeal, due to his failure to develop it with citations to pertinent authority. **See In re Estate of Whitley**, 50 A.3d at 209-10.

Second, Appellant claims that the trial court committed reversible error by ignoring the settled "original survey" principle used by surveyors to determine the location of a boundary in physical space. **See** Appellant's Brief at 55. Essentially, Appellant takes issue with the trial court's finding of fact that Appellant's expert report was not complete or reliable. **Id.**

Appellant argues that the "original survey" principle controls the instant matter. According to him, the surveyor must conduct such title research as is necessary to identify the "original survey" that fixed the location of the boundaries, and then conduct field measurements, following the original surveyor's stated direction and distances, to determine the locations of the boundaries in issue. **See** Appellant's Brief at 55. Here, the surveyors hired by Appellant relied upon a 1964 city survey that did not depict the area at issue – i.e. the Hancock Street property – but instead, the area along South Second Street. Appellant argues that this survey nevertheless fixed the boundaries of the properties, and that the survey Mr. Lonie conducted from the fixed point was accurate. **See** Appellant's Brief at 56-57. Appellant contends that the trial court "ignored" his experts' testimony and "failed" to acknowledge the correct procedure for determining boundaries. **Id.** at 60-61.

The only case law cited by Appellant in this section of his argument refers to the legal effect of a deed description and cites, generally, to the case rather than to the specific point within it. **See** Appellant's Brief at 58; **see also Baker v. Roslyn Swim Club**, 213 A.2d 145 (Pa. Super. 1965). He does not cite case law as to why the "original survey" principle should control the trial court's analysis or why this Court should ignore the trial court's determination that the survey was not complete or accurate. Thus, Appellant has waived this argument for purposes of appeal, due to his failure to develop it with citations to pertinent authority. **See In re Estate of Whitley**, 50 A.3d at 209-10.

In his third issue, Appellant argues that the trial court committed reversible error by "mistakenly thinking that the area in dispute was the entire seven-foot-wide area north of Appellant's cinderblock wall. **See** Appellant's Brief at 61. Appellant argues that the area in dispute was really only the two or three inches of space north of the cinderblock wall. **Id.** Based upon this alleged misunderstanding, Appellant contends that the court's adverse possession analysis is flawed. **Id.**

Again, Appellant does not cite to a single case in support of his position. Although Appellant has included, generally, some of the standards for adverse possession in his "overview" of case law at the outset of the brief, his argument section does not tie pertinent authority to the facts of this argument. Thus, Appellant has waived this argument for purposes of appeal, due to his

- 10 -

failure to develop it with citations to pertinent authority. **See In re Estate of Whitley**, 50 A.3d at 209-10.

Finally, Appellant argues that the trial court committed reversible error by overlooking the fact that Appellees did not present evidence establishing the "continuous possession" element of their adverse possession defense. **See** Appellant's Brief at 64. Appellant claims that because Appellees did not present evidence that their immediate predecessors in title had adversely possessed the property in the same manner as Appellees during the twenty-one-year period, they could not establish the required elements of the defense. **Id.**

Initially, we note that while there are exceptions, "it has long been established that the plaintiff in a civil action has the burden of proof – a burden which must be met by a preponderance of the evidence." **See Johns v. Shaler Twp.**, 368 A.2d 339, 339-40 (Pa. Super. 1976). Appellant appears to have misplaced the burden of proof on Appellees. Regardless, Appellant's brief cites only to one case in support of his argument, namely, to state that "an adverse possession claimant must satisfy all elements; lacking only one will defeat a claim." **See** Appellant's Brief at 66 (citing **Recreation Land Corporation v. Hartzfeld**, 947 A.2d 771, 774 (Pa. Super. 2008).

However, Appellant has cited to no applicable case law regarding the concept of "tacking" or any further law in support of his claims regarding adverse possession. **See** Appellant's Brief at 64-68. He has not developed this claim in any meaningful way. Thus, Appellant has waived this argument

- 11 -

for purposes of appeal, due to his failure to develop it with citations to pertinent authority. *See In re Estate of Whitley*, 50 A.3d at 209-10.

Judgment affirmed. Jurisdiction relinquished.

Judge Lazarus joins the memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/18